WILLIAM B. THORPE, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Drawing-room cars — liability of railroad company drawing cars under contract with car company.*

The defendant entered into a contract with Webster Wagner, by which Wagner agreed to place upon defendant's road certain drawing-room cars at his own cost and keep the interiors thereof in good order, Wagner's conductors and porters thereon to be carried free of charge by the railroad company. The defendant's conductors had a right to enter the cars for any purpose connected with the management of the train, and for the collection of fares, and to the assistance of Wagner's conductors and porters in enforcing good order; but not otherwise to interfere with the business of such cars. In consideration of the railroad company hauling and making certain repairs to the cars, Wagner agreed to pay it twenty per cent of the gross receipts.

In an action brought by the plaintiff against this defendant the railroad company, to recover for injuries sustained by reason of his alleged wrongful removal from the drawing-room car by the porter thereof, *held*, that the defendant was liable for any injuries so sustained by him.

APPEAL from a judgment entered on a verdict in favor of the plaintiff at the Cayuga Circuit.

The plaintiff, on July 20, 1874, entered defendant's train at Syracuse. To the train was attached in addition to the ordinary cars a Wagner drawing-room car, which latter was run upon defendant's road under the provisions of the contract hereinafter set forth. The drawing-room car was in charge of a porter employed by Wagner. The train was in charge of defendant's conductor. The plaintiff passed through the ordinary cars, and finding no seats, entered the drawing-room car, having paid to defendant's conductor the regular fare to Auburn. The porter of the drawing-room car demanded additional fare for riding in that car, which plaintiff declined to pay, at the same time refusing to leave the car, on the ground that there were no seats vacant in the other cars, but saying he would do so when there were seats to be had. The porter thereupon removed the plaintiff from the drawing-room car while the train was in motion. The evidence as to excessive force having been used and as to there having been vacant seats in the other cars was conflicting. The jury found for the plaintiff. A motion was subsequently made at Special Term for a new trial and was denied.

The following is the contract under which the Wagner cars were run upon the defendant's road :

"Agreement made the first day of January, one thousand eight hundred and sixty-nine, between the New York Central Railroad Company, of the first part, and Webster Wagner, of the second part :

" For the purpose of the establishment and maintenance of a line of compartment or drawing-room cars upon the New York Central Railroad, and to secure to the public the advantages thereof and of all existing improvements in connection with the business of compartment or drawing-room cars, it has been agreed as follows, viz. :

" 1st. The said Wagner shall, at his own cost, place upon the said railroad as many compartment or drawing-room cars as the business of the company shall from time to time require, and shall, at his own cost, keep in thorough repair the furniture of the cars, and maintain the interior of said cars at all times in good and cleanly order. He shall also keep the exterior of the cars properly painted and varnished, the railroad company furnishing shop room and doing the painting and varnishing at cost. All other repairs are to be done by the railroad company at their expense, but in case

any car shall be so deteriorated or damaged by age, derailment, collision or fire as to be unworthy of repair the railroad company shall not be obligated to repair the same.

"The number of cars requisite for the accommodation of the traffic shall be determined by the superintendent of the railroad company, who shall also have at all times the power to decide whether any of such compartment or drawing-room cars shall be in other than good running order, and who shall also determine the location of such compartment or drawing-room cars in the trains.

"The conductors and porters in charge of the compartment or drawing-room cars shall be carried without charge; the railroad company not to be liable for injuries to the persons of such conductors and porters, the said Wagner undertaking to indemnify and save harmless the said railroad company from all liability to the employes of the compartment or drawing-room cars when in charge thereof or when traveling on any part of the road on the business appertaining to the compartment or drawing-room cars. The conductors of the railroad trains shall have the right at all times to enter such compartment or drawing-room cars for the purpose of collecting the fares of the passengers, or for any purpose connected with the management of the train, and the conductors and porters of the compartment and drawing-room cars shall at all times assist the conductors of the railroad trains in enforcing the good order and discipline of the road. The conductor of the train shall not be at liberty to interfere in any way with the matter of the distribution of compartment or drawing rooms, and shall not interfere in any manner with the business of the compartment or drawing-room cars except for the purpose of collecting the fares or tickets of the passengers, and in aid of the good order and discipline of the road. The said Wagner shall give his personal attention to the management of the business, and in case of his death his personal representatives or the owners of the compartment or drawing-room cars shall at their own expense employ some suitable person, acceptable to the railroad company, to take the general charge of the said compartment or drawing-room cars and the business thereof.

"The said Wagner is to indemnify and save harmless the said railroad company from any liability to patentees of alleged inventions in respect of compartment or drawing-room cars, and is at his

own expense to procure the requisite licenses for any such inventions which may be used in said compartment or drawing-room cars. The said Wagner shall not assign this contract without the consent of the company.

"2d. In consideration of the service performed by the New York Central Railroad Company in hauling said compartment or drawing-room cars, in cleaning the exterior thereof, in the furnishing of fuel and light therefor, and of their undertaking, in respect of the repairs to the trucks and brakes and the exterior of said cars, the said Wagner agrees to pay to the New York Central Railroad Company each and every month twenty per cent of the gross receipts and earnings derived by him from the business (first deducting from the sum of such gross receipts the amount paid by the said Wagner as the patent or license fee for the patented inventions used in such compartment or drawing-room cars). Said Wagner is to keep books of account of such receipts and earnings, and exhibit the same and all vouchers appertaining thereto to the treasurer of the New York Central Railroad Company whenever required by said treasurer.

"The said payment of the twenty per cent of the gross receipts and earnings is to be made to the treasurer of the New York Central Railroad Company on or before the tenth day of each month.

"3d. This agreement shall continue for the term of ten years from the first day of January, 1869, and during the continuance thereof no other party than the said Wagner or his assigns shall be allowed to run compartment or drawing-room cars on said railroad; but this provision is not to prohibit the said company from permitting the compartment or drawing-room cars of other railroads to run thereon from Buffalo and Suspension Bridge to Rochester, as they are now run, upon such terms as may be agreed upon between said New York Central Railroad Company and such other railroads.

"THE N. Y. CENTRAL RAILROAD CO.
"D. TORRANCE, V. P.
{ U. S. 20 cents Rev. stamp. }     "W. WAGNER."

*Harris & Cook*, for the appellant.

*Rollin Tracy*, for the respondent.

BOARDMAN, J. :

It was submitted to the jury to find, (1) whether the cars were in such rapid motion as to render it unsafe and imprudent for the porter of the Wagner car to remove the plaintiff from that car to another in the rear; (2) whether, for this reason, the plaintiff was justified in refusing to pass back into the other car; (3) whether, if the porter was right in forcibly removing the plaintiff from the Wagner car, he did not use more force than was necessary for that purpose. To have given the plaintiff a verdict the jury must have found, either that it was unsafe to pass from one car to another while the cars were in motion, or that the porter used excessive force. In either event the cause of action against some one was established. It was also submitted to the jury to find whether the plaintiff was a trespasser or wrongfully in the Wagner car. That fact may have been of importance in getting at the amount of damages, but I think it was not material in respect to the right of recovery. Even if plaintiff had been a trespasser in the Wagner car the porter could not remove him from the car in a dangerous and unsafe manner or use excessive force. (*Rounds* v. *Del., Lack. and W. R. R. Co.*, 64 N. Y., 129.)

The jury has determined that the removal of plaintiff from the Wagner car at the time and under the circumstances and in the manner was wrongful. A cause of action is found to exist in favor of the plaintiff. Is it against the defendant? If the porter had been defendant's servant no reasonable doubt could exist as to its liability under the facts proved. (*Rounds* v. *D., L. and W., ante* ; *Cosgrove* v. *Ogden,* 49 N. Y., 255 ; *Jackson* v. *Second Avenue R. R. Co.,* 47 id., 274.) It may well be that Wagner is liable ; of that we need not now consider.

The legislature of this State has given to the defendant certain franchises. It cannot divest itself of its responsibility under the laws for the proper exercise of its duties. The arrangement between the defendant and Wagner was private and personal. When Wagner's car was put into the train it became a part of defendant's train, was under the control of its conductor, was in his care and custody. The defendant and not Wagner ran the train. In effect Wagner, by his agreement, supplied the defendant with certain cars to be used for the joint interest of Wagner and

defendant.   The Wagner cars were run for joint account.   Why,
then, are not Wagner's servants in these drawing-room cars also
the servants of defendant?   Why shall not the defendant be held
responsible for the wrongful act of Wagner or his agents while
upon its road and under its control?   The Illinois Central Railroad
was held liable for an injury to one of its own passengers on its
own road, caused by the fault of a train of the Michigan Central
Railroad running on the same road by the owner's permission.
(*Railroad Co.* v. *Barron*, 5 Wall. [U. S]., 90, 104, and author-
ities cited.)   Drawing-room cars, under a contract like that in
evidence in this case, were seized for taxes against the company
owning the road but not the cars.   (*Kennedy* v. *St. Louis, etc., R.
R. Co.*, 62 Ill., 395 ; 7 Am. Railway Cases, 346.)   The owner of
a road was held responsible for the use of a patented improvement
on cars run on its road, though another road held all its stock,
provided the cars and worked the road under a special contract.
(*York, etc., R. R. Co.* v. *Winans*, 17 How. [U. S.], 30, especially
top of page 40; see, also, *Railroad Co.* v. *Brown*, 17 Wall. [U. S.],
445, 450, 451 ; 1 Redf. Law of Railways, chap. 22, § 1, p. 598 ;
*Macon and Augusta R. R. Co.* v. *Mayes*, 49 Georgia, 355.)

From the authorities cited we are led to the conclusion that the
defendant was liable for the acts of the porter of the Wagner car,
to the same extent as if he had been hired by, and was in the
immediate employment of, the defendant.

The learned justice charged the jury, in substance, that plaintiff
was bound to occupy a vacant seat in the common car, if there was
one, but if there was none he had the right to enter the drawing-
room car.   To the latter part of this proposition the defendant
excepted.

The correctness of this charge is only of importance upon the
amount of damages, and the same is true of the refusal to charge
to be hereafter noticed.   Perhaps even in that respect it may not
be material whether the plaintiff was rightfully in the Wagner car
or not.   He was on defendant's train.   He was entitled to a seat.
He takes the first he finds, as the jury, by its verdict, says.   When
requested to pay the extra twenty-five cents he notified the
porter that there were no vacant seats in the other cars, and that
he would go in there as soon as he could get a seat.   I think the

charge, under the facts, was correct. If so it was also correct to refuse to charge that it was the plaintiff's duty to ask the conductor for a seat before passing into the drawing-room car. The fact is evident that there were not seats enough in the ordinary cars for the passengers therein, and that the conductor could not give seats to all. The jury, by its verdict, has so found. There is evidence to sustain such finding. This appeal is from the judgment alone. Every fact found by the jury against the defendant is conclusive. The defendant's proposition, then, is that the plaintiff should have asked the conductor for a seat when there was none to his knowledge vacant, and that a failure to do this made plaintiff a trespasser in going into the Wagner car. I think he was wrongfully there only when he refused, upon demand, to pay the extra fare, and unreasonably declined to leave the car.

These are all the questions presented for consideration, and the reasons above given lead to an affirmance of the judgment, with costs.

LEARNED, P. J., concurred.

SAWYER, J. (dissenting):

I do not think the porter on the Wagner car was defendant's servant; nor that the contract establishes it any more than a percentage to a salesman by way of salary makes him a partner.

Judgment affirmed, with costs.